UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Bettcher Industries, Inc.,                       Case No. 3:14 cv 406

         Plaintiff

      v.                                               MEMORANDUM OPINION
                                                          AND ORDER

Hantover, Inc. et al.,

         Defendants


## BACKGROUND

This patent infringement action, brought by Bettcher Industries, Inc., makes a return engagement to this Court. In 2006, Bettcher brought a patent infringement action against Hantover, Inc. related to two patents, the '325 and '184 patents. *Bettcher v. Hantover*, Case No. 3:06 cv 741 (N.D. Ohio). The 2006 litigation was resolved via a settlement between the parties in April 2007.

Bettcher brings this lawsuit against Hantover and Heartland Fabrication & Machine, Inc. for infringement of five patents, including two patents which were the subject of the 2006 litigation. The final claim by Bettcher is against Hantover for breach of the 2007 settlement agreement.

This matter is before me on Defendant Heartland Fabrication & Machine, Inc.'s motion to dismiss for lack of personal jurisdiction, Plaintiff's opposition, and Heartland's reply thereto. For the reasons that follow, Heartland's motion is found well taken and granted.

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

When personal jurisdiction is challenged in a patent infringement action the district court applies the law of the Federal Circuit. *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008), citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995). Where the personal jurisdiction analysis "is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only make a *prima facie* showing that defendants are subject to personal jurisdiction." *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). But, where discovery takes place and the jurisdictional facts are undisputed, a plaintiff must establish, by a preponderance of the evidence, that the jurisdictional facts are sufficient to establish personal jurisdiction. *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001).

The Supreme Court has outlined the requirements for personal jurisdiction as follows:

> A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. *See International Shoe*, 326 U.S., at 317, 66 S.Ct. 154. Specific jurisdiction, on the other hand, depends on an "affiliatio[n] between the forum and the underlying controversy," principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. Von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L.Rev. 1121, 1136 (1966). . . . In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction." Von Mehren & Trautman 1136.

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011).

Defendant Heartland contends Bettcher fails to establish a *prima facie* case in support of personal jurisdiction. Heartland argues that specific jurisdiction is lacking as there is an absence of contacts between the Defendant and the forum state insufficient to meet the requirements of specific or general jurisdiction. The limited contacts which Heartland has with the forum state do

2

not meet "the continuous and systematic general business contacts" which satisfy the dictates of general jurisdiction.

In contrast, Bettcher focuses its argument on general jurisdiction based upon a "stream of commerce" theory. The Plaintiff contends that Heartland sells its product through a national distributor and Heartland's contacts with the forum state have been continuous and systematic, thereby comporting with standards of fair play and substantial justice and would not impose an undue burden upon the Defendant to defend against Plaintiff's claims in this forum.

As Bettcher does not contest Heartland's arguments on specific jurisdiction, Plaintiff has essentially waived any argument regarding specific jurisdiction, via its focus on general jurisdiction. *See HealthSpot, Inc. v. Computerized Screening, Inc.*, __F.Supp.3d __, 2014 WL 6896298 *3 (N.D. Ohio Dec. 8, 2014) (finding particular arguments on personal jurisdiction may be waived or forfeited). Therefore, my analysis focuses solely on general jurisdiction.

## GENERAL JURISDICTION

In order to find general jurisdiction in the context of a patent infringement suit, the defendant must have " 'continuous and systematic' contacts with the forum state," with "such activity [that] will "confer [ ] [general] personal jurisdiction even when the cause of action has no relationship with those contacts." *Avocent*, 552 F.3d at 1331-32. (Citation omitted).

The Supreme Court has noted that "placing goods into the stream of commerce 'with the expectation that they will be purchased by consumers within the forum State' may indicate purposeful availment" sufficient to find personal jurisdiction. *J. McIntyre Mach., Ltd v. Nicastro*, 131 S. Ct. 2780, 2788 (2011). The Federal Circuit found personal jurisdiction where: (1) the defendant placed the accused product in the stream of commerce; (2) the defendant knew the destination of the products; and (3) the defendant's conduct and connection with the forum state was such that

3

they should reasonably have anticipated being haled into court there. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994). Moreover, the stream of commerce theory is assessed on a "case-by-case basis" considering the particular facts of the case. *Atlantis Hydroponics, Inc. v. International Growers Supply, Inc.*, 915 F.Supp. 2d 1365, 1374 (N.D. Ga. 2013), quoting *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1362 (Fed. Cir. 2012).

In Court in *McIntyre*, expanded upon the stream of commerce theory and the requirements which satisfy personal jurisdiction:

> This Court has stated that a defendant's placing goods into the stream of commerce "with the expectation that they will be purchased by consumers within the forum State" may indicate purposeful availment. . . . But that statement does not amend the general rule of personal jurisdiction. It merely observes that a defendant may in an appropriate case be subject to jurisdiction without entering the forum—itself an unexceptional proposition—as where manufacturers or distributors "seek to serve" a given state's market. . . The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign. In other words, the defendant must "purposefully avail[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. . . . sometimes a defendant does so by sending its goods rather than its agents. The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.

131 S.Ct. at 2788. (Citations omitted).

In this case the parties engaged in discovery on the issue of personal jurisdiction and the record contains affidavits, depositions, and other exhibits in support of their respective positions.

It is undisputed that Heartland is a Missouri corporation with its principal place of business in Raytown, Missouri. (Compl. at ¶ 3). In his affidavit, Heartland's president, Michael Hudson, averred that his company owns no property in Ohio and does not have any officers or employees located in Ohio. (Doc. No. 8-2 at ¶ 6). Heartland also does not maintain any records, bank

4

accounts, or post office boxes, nor does it have an Ohio mailing address, and it is not licensed to do business in Ohio. (*Id.*) In addition, Heartland does not advertise in Ohio nor does it pay taxes or licensure fees in Ohio. (*Id.*).

Heartland does acknowledge the following contacts with Ohio:

a. In 2008, Heartland through a program sponsored by the Small Business Administration entered into a mentor/protégé agreement and an accompanying confidentiality agreement with an Ohio-based company. Heartland terminated the mentor/protégé agreement in 2010, but my understanding is that confidentiality obligations with the Ohio-based company may still exist. The mentor/protégé agreement was unrelated to Heartland's fabrication of rotary knife blades and blade holders for Hantover.

b. Heartland sources some materials used in its machining and fabrication activities from an Ohio-based company. The materials Heartland sources from the Ohio-based company are not used to manufacture any products for Hantover or for manufacturing any rotary knife blades or blade holders.

(*Id.* at ¶ 8).

In support of its position, Bettcher offers the following evidence in support of general jurisdiction:

Heartland has been the exclusive manufacturer of the accused products for Hantover since September 2006. (Doc. Nos. 24-4; 24-18; and Huff Dep. at pp. 22-23). Heartland also manufactures other replacement parts for use on Bettcher rotary knives as well as other products not related to the rotary knives, which are also distributed by Hantover. (Doc. No. 24-5). In his deposition, Heartland's president acknowledged that its sales to Hantover accounted for at least 20 percent of Heartland's revenue each year. (Hudson Dep., pp. 189).

According to the evidence submitted by Bettcher, since 2006, a significant number of sales relating to rotary knives have been sold to Hantover by Heartland. (Doc. No. 24-5). It is estimated by Bettcher that nearly 60 different Heartland items were sold by Hantover to end-users in Ohio.

(Doc. No. 24-6). Bettcher estimates these Ohio sales to be in excess of $10,000 based upon the documents obtained during discovery. (*Id.*)

Bettcher also states that "Heartland and Hanover have approached customers in this District and offered to sell" the offending products. (Opposition at p. 5). In support of that statement, Bettcher offers an email discussing a meeting with a Bettcher customer in Ohio and the possibility of selling the accused products. (Doc. No. 24-7). While the sale of such items would have been manufactured by Heartland, this evidence does not support Heartland's active participation in the alleged solicitation of a Bettcher customer. As Heartland was the exclusive manufacturer of the accused products, there is no dispute that such potential sales would have been manufactured by Heartland.

Additionally, Bettcher offers evidence that Heartland agreed to distribute Hantover products, including the accused products in this litigation. Heartland qualified for Small Disadvantaged Business certification as it qualified as a minority-owned company. (Hudson Dep., p. 30-31). Hudson testified that buyers would purchase items from Heartland that Heartland acquired from Hantover. (*Id.* at p. 32). Hudson stated that he considered his company a distributor for three shipments, none of which were to Ohio. (*Id.* at pp. 32-33). The distributorship lasted less than six months, according to Hudson (*Id.* at p. 24, 30) and Bettcher surmises the agreement is still in place as there is no evidence the agreement was terminated. Bettcher also relies on an email from Hantover to a customer suggesting it purchase the offending items from Heartland, due to its minority-owned status, seeking further discussion on the issue. (Doc. No. 24-11). However, Hantover's chairman of the board, Bernard Huff, testified that the customer in the email exchange did not purchase the offending items from Heartland. (Huff Dep. at pp. 47-60).

Bettcher also contends that Heartland was aware of the Plaintiff's patents and was actively involved in working with Hantover to create competing products.

6

Heartland disputes it altered any of Hantover's designs and characterizes its contracts with Hantover as merely purchase orders, per the testimony of Hantover's chairman of the board. (*Id.* at pp. 70-71). Heartland does not dispute that it learned Bettcher was a competitor of Hantover, nor does it dispute knowing Hantover sought to undercut Bettcher's prices. Heartland had no input into Hantover's pricing of the offending products. (*Id.* at pp. 48-49). Moreover, when Hantover advised Heartland to "stop the presses," in December 2013, it was due to the resolution in the 2006 litigation. (Hudson Dep. pp. 152-53).

Following the mediation, Hantover made changes to the offending items. With no input from Heartland, Hantover directed Heartland to implement the changes. (Huff Dep. pp. 65-67).

Based upon the evidence presented, I cannot find general jurisdiction exists regarding Heartland.

Here, sales of offending items manufactured by Heartland for Hantover to Ohio customers totaled an estimated $10,000 over a seven year period. Unlike the situation in *Step2 Co., LLC v. Parallax Group Int'l, LLC*, 2010 WL 3783151 (N.D. Ohio 2010), the defendant there "cultivated on-going relationships with [multiple] national retailers" such as Sam's Club and Menards. *Id.* at *6. The defendant in *Step2* sold over $1.2 million dollars of items in Ohio through these national retailers. *See also Allied Machine and Engineering Corp. v. Jewell Machine & Fabrucation, Inc.*, 2011 WL 2292191 (N.D. Ohio 2011) (no general jurisdiction where defendant's total sales of products shipped into Ohio were less than $200,000 over seven years).

The sale of products in a forum state through the stream of commerce is insufficient to sustain general jurisdiction. *Atlantis Hydroponics, Inc.*, 915 F.Supp. at 1375. As noted by the Supreme Court in its most recent pronouncement on the issue of general jurisdiction:

> Turning to all-purpose jurisdiction, [ ] *International Shoe* speaks of "instances in which the continuous corporate operations within a

7

>state [are] so substantial and of such a nature as to justify suit . . . *on causes of action arising from dealings directly distinct from those activities.*" . . . . Accordingly, the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in forum State" 564 U.S. at __, 131 S. Ct. at 2851.

*Daimler AG v. Bauman*, 134 S.Ct. 746, 761 (2014). (Citations omitted and emphasis in original).

The circumstances in the present action do not amount to continuous or systematic contacts sufficient to establish, by a preponderance of the evidence, that Heartland is essentially home in the state of Ohio.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss (Doc. No. 8) is granted. Defendant Heartland Fabrication & Machine, Inc. is dismissed from this litigation.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge

8