UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Bettcher Industries, Inc.,                                    Case No. 3:14-cv-406

               Plaintiff

      v.                                                    MEMORANDUM OPINION
                                                                AND ORDER

Hantover, Inc.,

               Defendant

## I. BACKGROUND

Bettcher Industries, Inc. makes Whizard® Trimmers, rotary trimming knives and accessories used for the commercial trimming of meat. Bettcher owns the patents relating to the housing and blades for these items. Hantover, Inc. also makes replacement parts for the Bettcher knives. It is Hantover's manufacturing and sale of these replacement parts which Bettcher claims infringes its patents and violates a 2007 settlement agreement between Bettcher and Heartland Fabrication & Machine, Inc. regarding some of the same patents at issue here. Hantover's alleged infringing items are distributed by Heartland. Although initially named as a Defendant in this litigation, on January 7, 2015, Heartland was dismissed from this litigation for lack of personal jurisdiction. (Doc. No. 28).

Bettcher asserts five claims of patent infringement and breach of the 2007 settlement agreement against Hantover. The patents at issue include:

    U.S. Patent Nos. 6,769,184; 7,000,325; and 8,074,363 (Blade); and

    U.S. Patent Nos. 6,662,452; and 6,978,548 (Housing).

The parties briefed the issues on claim construction (Doc. Nos. 33, 34, 35, 36, and 41) and submitted their Joint Claim Construction and Prehearing Statement (Doc. No. 37). I conducted a

Markman hearing on July 20, 2015 and granted leave for post-hearing briefing to address an issue raised anew at the hearing. That supplemental briefing (Doc. Nos. 44, 46, and 47) is also before me. Having considered the arguments of the parties presented in both their memoranda and at the hearing, I make the following determinations.

## II. APPLICABLE LEGAL STANDARD

The meaning of patent claim terminology is a matter for the court and not the trier of fact. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996). As the claims of the patent, not its specifications, mark the measure of the invention, the Federal Circuit teaches that "analysis must begin and remain centered on the claim language itself, for that is the language the patentee has chosen to 'particularly point [ ] out and distinctly claim [ ] the subject matter which the patentee regards as his invention.'" *Innova/Pure Water v. Safari Water Filtration*, 381 F.3d 1111, 1116 (Fed. Cir. 2004) (citations omitted).

The Federal Circuit has consistently held "words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[O]rdinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313.

In ascertaining the ordinary and customary meaning, a court gives priority to the intrinsic evidence. *Vitrionics,* 90 F.3d at 1582. Consideration of the intrinsic record includes the claims themselves, the patent specification and prosecution history through the lens of one of ordinary skill in the art at the time of the invention. As stated by the Court in *Phillips,* "claims 'must be read in view of the specification of which they are a part,' as 'it is the single best guide to the meaning of a disputed term.'" 415 F.3d at 1315. (Quotations omitted).

A court may also consider extrinsic evidence which includes a variety of external resources such as testimony from the inventor or an expert as well as dictionaries and treatises. *Id.* at 1317. However, extrinsic evidence is given less significance than intrinsic evidence to determine " 'the legally operative meaning of claim language.'" *Id.* (Citations omitted).

The *Phillips* Court also cautioned that "[t]he sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." *Id.* at 1324.

With this general framework in mind, I now turn to the claims in dispute.

### III. CLAIM CONSTRUCTION

A. Frustoconical

Bettcher proposes the term "frustoconical[1]" be given the same meaning as adopted by Judge Zouhary in related litigation[2] wherein he defined this to be "the shape of a portion of an exterior surface of a cone. Cone means a solid generated by a straight line, one end of which remains fixed while the other end moves around a closed curve." (Doc. No. 33-8, p.4).

Hantover proposes a construction which states "having the shape of the exterior surface of a cone with the narrow end or tip removed." Hantover contends this construction is consistent with the dictionary definition and consistent with the drawings illustrating frustoconical bearing surfaces in the '325 patent.

Bettcher contends that its proposed definition provides clarity on the definition of a cone and prevents confusion down the road on this issue. In contrast, Hantover argues in favor of a

---

[1] The term "frustoconical" is contained in claim 1 of both the '325 and '363 patents.
[2] *Bettcher Indus. Inc. v. Bunzel USA, Inc.*, Case No. 08 cv 2423 (N.D. Ohio).

3

simpler description which does not define the word cone because its inclusion has the potential to confuse the jury.

In addition, Bettcher argues against use of the description "with the narrow end or tip removed" because the drawing depicting the alleged infringing blade does not show the tip removed and that also runs the risk of confusing the jury.

Both sides are at odds over the definition of a cone within the description and Bettcher advocates exclusion of Hantover's language regarding removal of the narrow end or tip. As there is agreement on both sides that neither the blade patents nor the prosecution history limit the definition, I turn to extrinsic resources to aid in this determination.

Merriam-Webster's Dictionary defines "frustoconical" as "of the shape of a frustum of a cone." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 917 (3d ed. 19  ). This same dictionary defines "frustum" as :

1: the part of a cone-shaped solid next to the base and formed by cutting off the top by a plane parallel to the base; *also* : the part of a solid (as a cone or pyramid) intersected between two planes that are either parallel or sometimes inclined to each other
2: one of the drums of the shaft of a column.

*Id.*

NAYLER'S DICTIONARY OF MECHANICAL ENGINEERING 84 (4th ed. 1996 or 2006) defines cone as:

(a) A solid generated by a straight line, one end of which remains fixed while the other moves around a closed curve.
  *right circular cone* A cone formed when the closed curve is a circle. All transverse sections are circular. The fixed point is the "apex," the centre line is the "axis," and the constant angle between the moving line and the centre line is the "cone angle."
(b) The stepped driving pulley used in belting on a machine tool for the governing of different speeds, sometimes called the "speed cone."
(c) The conical race for balls in certain types of ball-bearing.

Considering these resources and the parties' arguments, while Hantover's definition is simpler, I do not find the definition of a cone will confuse but instead will be of guidance for the trier of fact.

Therefore, I find the following to be an appropriate definition of the term "frustoconical": "having the shape of a portion of the exterior surface of a cone with the narrow end or tip removed; a cone being a solid generated by a straight line, one end of which remains fixed while the other end moves around a closed curve."

B. "Bearing Face/Surface/Location"

The parties disagree over construction of the terms characterized by Bettcher to include "bearing face," "bearing surface," and "bearing location," regarding the blade patents. The parties' definitions are set forth as contained in Exhibit A to their Joint Construction and Prehearing Statement:

| Term | Bettcher Definition | Hantover Definition |
| --- | --- | --- |
| (first and second) bearing surface | "the area of a part capable of supporting mutual contact with another part" | the portions of the annular bearing race that engage or contact the bearing structure |
| bearing location | "the area of a part capable of supporting mutual contact with another part" | areas where the blade and blade support member are in engagement or contact with each other |

(Doc. No. 37 at pp. 6-10).

The difference between the two definitions centers on whether Bettcher's "capable of supporting mutual contact" definition is the proper construction versus Hantover's requirement "to engage or contact the bearing structure."

I first turn to consider the intrinsic evidence. In looking at the patent specifications, each abstract describes, "[t]he blade and blade supporting structure are engagable along bearing contact locations. . .". (Doc. Nos. 33-2, p. 1; 33-3, p.1; 33-4, p.1). The same holds true for language under the summary section. (Doc. Nos. 33-2, p. 7; 33-3, p.7, 33-4, p. 8). The specification of the '325 patent offered by Hantover as evidence in support its position uses the terms "engaged" and "engagable":

5

> FIGS. **10-14** are illustrative of a modified knife that embodies the present invention. The knife of FIGS. **10-14** is constructed like the knife except for the blade support structure **120** and the blade **122**. Accordingly, only the blade support structure **120** and the blade **122** are illustrated and described in detail to the extent they differ from the blade support structure **16** and the blade **20**. Reference should be made to FIGS. **1-9** and the associated description for details of the remaining parts of the knife of FIGS. **10-14**. Parts of the blade support structure **120** and blade **122** that are the same as parts of the blade support structure **16** and blade **20** are indicated by corresponding primed reference characters.
>
> The blade support structure **120** supports the blade **122** for rotation about its central axis **124** with the blade and blade support structure ==engagable== at least at spaced apart bearing locations proceeding in the direction of the axis **124**. The axially spaced bearing locations suspend the blade so that the blade and blade housing remain spaced apart except for the bearing locations. See FIG. **14**.
>
> The blade support structure **120** is constructed substantially like the blade support structure **16** except that its outer peripheral wall **130** defines a series of circumferentially spaced apart, radically thickened wall sections **132**. The wall sections **132** define radically inwardly facing frustoconical bearing faces **133**, **134** that are substantially centered on the axis **124** and converge proceeding in opposite axial directions. These bearing faces are ==engaged== by bearing bead surfaces on the blade along narrow lines of contact. In the preferred embodiment the bearing faces **133**, **134** form walls of inwardly opening grooves formed in each thickened wall section **132**. The portions of the peripheral wall **130** between the thickened sections are relieved and spaced away from the blade bead surfaces at all times (FIG. **13**).

(Doc. No. 33-3 at pp. 9-10) (emphasis added).

Claim 1 of the '184 patent also references bearing locations in the following manner:

> **1.** A power operated knife comprising a handle, headpiece, blade support structure, and an annular blade member supported for rotation about a central axis by said blade support structure, said blade support structure comprised of a blade support member extending substantially continuously about said blade member, said blade member and blade support member ==engagable== at least at three bearing locations spaced apart circumferentially proceeding about said axis each of said bearing locations comprising first and second lines of bearing contact spaced apart in the direction of said central axis said axially spaced lines of bearing contact suspending the blade so that the blade and the blade support structure remain spaced apart except for the bearing locations.

(Doc. No. 33-2, p. 11) (emphasis added).

The construction proposed by Hantover is not supported by the language in the specifications. These patents and their claims, as noted by Bettcher's counsel at oral argument, "are directed only to the blade, and they don't actually mention the housing." (Doc. No. 43 at p. 46). As noted by the description in the abstract, "[t]he blade and blade supporting structure are engagable along bearing contact locations that are spaced apart in a direction parallel to the axis so that the

6

blade is stabilized both radically and axially *as the knife operates*." (Doc. No. 33-2, p.1) (emphasis added).

Hantover also relies on the prosecution history to support its position that Bettcher disclaimed the construction it now proposes in both the '184 and '363 patents. I disagree.

Regarding the '184 patent, Bettcher was consistent in its position that the term bearing was "engageable." For example, in reconsideration before the patent examiner, Bettcher stated:

> Reconsideration of the rejection of claims 13-17 is respectfully requested. These claims feature a power operated knife comprising a blade support structure and an annular blade engagable along the lines of bearing contact that are spaced apart in a direction parallel to the blade axis. The first and second lines of bearing contact are respectively formed by first and second convergent bearing surfaces on one of the blade and blade support structure. The first and second bearing surfaces engage a surface on the other of the blade and blade support structure along a line of contact.

(Doc. No. 36-3 at p. 23). Similarly, in its appeal to the Board of Patent Appeals and Interferences, Bettcher again utilized similar language:

> The blade support structure 16 supports the blade 20 for rotation about its central axis 22 (page 5, line 35) with the blade and blade support structure engagable at bearing locations that are spaced axially apart (i.e. spaced apart proceeding in the direction of the axis 22). The bearing locations are defined by circumferential line segments that assure that the blade and blade support structure engage only along extremely small contact areas. The axially spaced apart bearing line segments assure that structure while frictional resistance to blade rotation afforded by the bearing contact is minimized—thus minimizing heat built-up in the knife. As best illustrated by Figure 9, the axially spaced bearing locations suspend the blade so that the blade and blade support structure remain spaced apart except for the bearing locations.

(Doc. No. 36-4, p. 10).

As for the '363 patent history, Hantover states Bettcher successfully argued "bearing" to mean "in engagement or contact" as contrasted with "capable of contact." This is not a correct characterization of Bettcher's position.

A close reading of the prosecution history confirms Bettcher sought to distinguish its patents from those of the prior art, the Decker patent, and took issue with the examiner's statement that "if a prior art device is capable of performing the intended use as recited in the preamble, or

7

elsewhere in a claim, then it meets the claim." (Doc. No. 36-5 at p. 78). Bettcher's reply brief to the Board of Patent Appeals argued "the Examiner mischaracterizes the structure recited in the pending claims and relied upon Federal Circuit case law that, when properly read, supports Applicant's position and a finding of patentability of the pending claims." (Doc. No. 36-5 at p. 73). To support its argument that the term "bearing" was a structural limitation, Bettcher advocated the following:

> The term "first and second bearing faces" or "first and second bearing surfaces" recited in independent claims 24, 31, 40 and 40 are structural limitations of the claimed rotary knife blade, not mere statements of intended use. For example, in claim 24, the bearing faces are specified as being spaced axially apart with respect to a central axis of the blade rotatable annular body. Further, the first and second surfaces are recited as having converging geometric structure, namely, the first surface converges proceeding away from the second axial end and the second surface converges proceeding towards the first surface.

(Id. at p. 78). Bettcher also distinguished the Decker patent as not meeting all of the claimed structural limitations of its claimed invention:

> [B]ecause the Decker patent does not include first and second bearing surfaces which are part of an annular bearing race extending radially into the wall of rotatable annular body, which are spaced axially apart and wherein the first surface converges proceeding away from the second axial end and the second surface converges proceeding toward the first surface.

(Id. at p. 80). Ultimately, the Board held "that Decker does not disclose two converging bearing faces or surfaces as called for in the claims on appeal." (Id. at p. 38). In disagreeing with the Examiner on the issue of the bearing surfaces, the Board explained:

> The Examiner argues that the surfaces discussed in Decker, i.e., surfaces 90 and 91 are capable of being bearing surfaces. The Examiner regards the term "bearing surface" as merely an intended use of the claimed faces. Ans. 4. We disagree with this construction of the Examiner. Under the Examiner's logic every surface on any article is a bearing surface, because every surface can bear against something or have something contact it. This construction of the term "bearing surface" trivializes the limitation of a bearing surface and strips the word "bearing" of any meaning. The only reasonable construction is that a bearing surface is different than surfaces in general, otherwise the term "bearing" is superfluous.

(Id.)

Bettcher's position was also consistent during the reexamination of the '325 patent. That *inter partes* reexamination[3] was requested by Bunzl Processor Distribution LLC and proceeded on a parallel path during the district court litigation between these parties. *See Bettcher Industries, Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 636-37 (Fed. Cir. 2011). In its brief on the reexamination, Bettcher argued:

> Appellant's characterization of the radial surface 91 of the Decker patent as comprising a "second bearing face" or a "second bearing surface" is incorrect. Appellant's characterization ignores the teaching of the Decker specification which makes it clear that the radial surface 91 is not a bearing surface and does not function as a bearing surface. Nor is there any suggestion in the prior art for converting the radial surface 91 into a bearing surface.

(Doc. 36-7, p. 37).

> One of ordinary skill in the art reviewing the Decker patent would understand that the radial surface 91 of the Decker knife blade 34 is not a bearing face or bearing surface and would further understand that there is no suggestion in the prior art to modify the radial surface 91 to be a bearing surface, much less a frustoconical bearing surface.

(Id. at p. 39). Moreover, the Board of Patent Appeals and Interferences agreed with Bettcher's position noting:

> In the absence of disclosure in Decker that the surface 91 is a bearing surface, we have not been provided with adequate articulation of the manner in which the references would have been combined to result in the claimed invention, especially considering the fact that the mere alteration in the shape of surface 91 so as to be frustoconical as recited in the claims does not necessarily require that such modified surface be a bearing surface. . . .
> We have also not been directed to sufficient evidence or rationale in this record that one of ordinary skill in the art would have made the required modification in the context of a rotary knife without the benefit of hindsight based on the specification of the '325 patent. . . . . However, no showing has been made with respect to any deficiency in the bearing configuration of Decker which would be addressed by a two point contact bearing system. Thus, it is also unclear to us why, in view of the specific bearing design disclosed by Decker, a person of ordinary skill in the art would apply a two point contact bearing system to Decker.

(Id. at pp. 11-12).

---

[3] An "inter partes review" procedure was created by the Leahy-Smith America Invents Act, 35 U.S.C. § 100 et seq. and "allows a third party to ask the U.S. Patent and Trademark Office to reexamine the claims in the already-issued patent and to cancel any claim that the agency finds to be unpatentable in light of prior art." *Cuozzo Speed Technologies, LLC v. Lee*, 136 S.Ct. 2131, 2136 (2016).

Based upon the prosecution history presented by the parties which I have carefully reviewed, I cannot find that Bettcher made a clear and unmistakable disclaimer of claim scope during the prosecution. *See Uship Intellectual Properties, LLC v. United States*, 714 F.3d 1311, 1313 and 1315 (Fed. Cir. 2013). *See also Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) ("where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender").

C. Preamble to Claim 12 of '452 Patent as a Limitation

Hantover contends the preamble and body of Claim 12 of the '452 patent should be construed as a limitation in claim 12 because the preamble "defines and provides antecedent support for the 'head member' recited in the body of the claim." (Doc. No. 34 at p. 16). Bettcher disagrees and argues against the limitation, including other parts of its rotary knife into a claim which is aimed solely at the housing.

The principles of preambles and their treatment as claim limitations were discussed by the Federal Circuit as follows:

> Whether to treat a preamble term as a claim limitation is "determined on the facts of each case in light of the claim as a whole and the invention described in the patent." *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 831 (Fed. Cir. 2003). While there is no simple test for determining when a preamble limits claim scope, we have set forth some general principles to guide that inquiry. "Generally," we have said, "the preamble does not limit the claims." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002). Nonetheless, the preamble may be construed as limiting "if it recites essential structure or steps, or if is 'necessary to give life, meaning, and vitality' to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002), quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999). A preamble is not regarded as limiting, however, "when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention." *Catalina*, 289 F.3d at 809. If the preamble "is reasonably susceptible to being construed to be merely duplicative of the limitations in the body of the claim (and was not clearly added to overcome a [prior art]rejection), we do not construe it to be a separate limitation." *Symantec Corp v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1288-89 (Fed. Cir. 2008). We have held that the preamble has no separate limiting effect if, for example, "the preamble merely gives a descriptive name to the set of

limitations in the body of the claim that completely set for the invention." *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434-35 (Fed. Cir. 2000).

*American Medical Systems, Inc. v. Biotec, Inc.*, 618 F.3d 1354, 1358-59 (Fed. Cir. 2010).

The preamble, transition, and body of Claim 12 state as follows:

> **12**. A split blade housing for a rotary knife having a handle assembly including a handle supporting frame member and a head member extending from the handle supporting frame member and a clamping assembly for releasably securing the blade housing to the handle assembly head member, the split blade housing comprising:
>
> an arcuate body for rotatably supporting an annular blade;
>
> first and second ends bounding a split in the housing; and
>
> a first bearing surface facing toward the blade adapted to be engaged by the clamping assembly to secure the blade housing to the head member and a second bearing surface facing away from the blade adapted to engage the head member;
>
> wherein at least one of the first and second bearing surfaces of the blade housing and the bearing surface of the head member including an area of scoring to inhibit movement of the first end of the blade housing relative to the second end when the clamping assembly secures the blade housing to the head member.

(Doc. No. 33-5 at p. 11).

In this case Bettcher argues the preamble language constitutes the purpose or intended use of the invention negating it as a limitation to Claim 12. I agree. My reading of the preamble finds it to state the purpose or intended use of the invention, in this case the split blade housing. The transition term "comprising" is the bridge between the preamble and the wording of the claim itself. The preamble describes the parts of the rotary knife while the claim details the elements of the split blade housing.

It is Hantover's position that the term "head member" contained in the preamble and the body of the claim constitutes antecedent support and acts as a positive limitation on the claim. It is true the term "head member" appears in both the preamble and the claim; however, a reading of that term in the claim finds it describes how the invention (split blade housing) interacts with the

11

head member. The language in the claim is descriptive and does not constitute a limitation as it is indicative of the purpose of intended use of the invention. *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006) (citations omitted); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999). Accordingly, I find the preamble of Claim 12 of the '452 patent is not a required limitation of the claimed split blade housing.

      D. "Lines of Bearing Contact" and "Annular Bearing Race"

The parties propose differing definitions of the phrase "(first and second) lines of bearing contact" in Claim 1 of the '184 patent.

| **Term** | **Bettcher Definition** | **Hantover Definition** |
|---|---|---|
| (first and second) line of bearing contact | "a distinct, elongated and narrow area of a part capable of supporting mutual contact with another part" | lines of engagement or contact between the blade and blade support member |

In its opening claim construction brief, Bettcher saw no need for construction of this term. Both Bettcher and Hantover agree there is no need to define the common term "line."

The same situation exists regarding the term "annular bearing race," as contained in Claim 1 of patents '325 and '363. The proposed constructions of the parties are as follows:

| **Term** | **Bettcher Definition** | **Hantover Definition** |
|---|---|---|
| annular bearing race | "a ring-shaped structure, areas of which are capable of supporting another structure" | a circular groove having surfaces for engaging or contacting a bearing structure |

Bettcher also initially suggested no construction was necessary as to the meaning of "annular bearing race" because it was not aware of a dispute between the parties on the issue of infringement or validity on this issue. Hantover argues that its proposed construction is more precise than Bettcher's and incorporates language used in the claims for its proposed construction. Hantover does not address the necessity for a construction as impacting on the issues of infringement or validity.

12

I also consider the guidance of the Federal Circuit as follows:

> We, however, recognize that district courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims. *See, e.g., Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001) (deciding that disputed issue was the proper application of a claim term to an accused process rather than the scope of the term); *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). (Claim construction "is not an obligatory exercise in redundancy.") Rather, "[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." *U.S. Surgical*, 103 F.3d at 1568. When the parties present a fundamental disagreement regarding the scope of a claim term, it is the court's duty to resolve it.

*O2 Micro Intern. Ltd v. Beyond Innovation Technology Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

As Hantover does not contend there is a need for claim construction regarding bearing contact or annular bearing race as it pertains to infringement, I agree the better course is to abstain from a construction that does not resolve a dispute between the parties.

E.  "Area of Scoring"

Below are the parties' construction of this term contained in the '452 patent:

| Term | Bettcher Definition | Hantover Definition |
|---|---|---|
| area of scoring | "surface having lines made upon it or onto it" | area of a surface having lines that extend through the surface |

Hantover contends it is a limitation on the "area of scoring" because Bettcher "didn't claim it as structured for increasing the frictional force. Instead, they chose the more narrow, more specific term 'scoring' and used it in the claim limitation 'area of scoring.'" (Doc. No. 43, p. 77). Based upon that limitation, Hantover states the term is limited to what they propose- its common, ordinary meaning. Bettcher argues its construction is preferred because it is supported by the language in the specifications.

13

In making this determination, I keep in mind the guidance of the Federal Circuit:

> "[C]laims must be read in view of the specification, of which they are a part." *1341 *Markman v. Westview Instruments,* 52 F.3d 967, 979–980, 34 USPQ2d 1321, 1329 (Fed.Cir.1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996); *see also United States v. Adams,* 383 U.S. 39, 49, 86 S.Ct. 708, 15 L.Ed.2d 572, 148 USPQ 479, 482 (1966) ("[C]laims are to be construed in light of the specifications and both are to be read with a view to ascertaining the invention."); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.,* 810 F.2d 1113, 1116, 1 USPQ2d 1563, 1566 (Fed.Cir.1987) ("Claims are not interpreted in a vacuum, but are part of and are read in light of the specification.").
>
> As this court has recently explained, "[o]ne purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.,* 232 F.3d 877, 882, 56 USPQ2d 1836, 1839 (Fed.Cir.2000). Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.

*SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001).

Turning to the specification of the '452 patent, at column 2, lines 13-16, the specification teaches:

> Preferably, the scoring of the clamp bearing surface of the blade housing comprises lines of scoring defining a pattern of alternating ridges and grooves, and the scoring of the blade housing bearing surface of the clamp body comprises lines of scoring defining a pattern of alternating ridges and grooves. The lines of scoring of the blade housing are configured to inter fit with the lines of scoring of the clamp body, that is, the ridges of the clamp body engage the grooves of the blade housing and the ridges of the blade housing engage the grooves of the clamp body to increase the frictional force between the clamp body and the blade housing.

(Doc. No. 33-5, p. 8).

The specification also addresses scoring beginning at the end of column 5 and comprising a large part of column 6:

> Advantageously, in the knife **10** of the present invention, the blade housing **14** and the clamp body **60** include structure for increasing the frictional force between the blade housing and the clamp body for any given tension or tightness of the clamping screws **68***a*, **68***b*. The structure includes an area of scoring **140** on the blade housing bearing surface **67***b* and a corresponding area of scoring **142** on the clamp body bearing surface **70***b*. As can best be seen in the FIGS. **3** and **7**, the scoring areas **140**, **142** comprise a plurality of parallel lines of scoring, the lines oriented being

14

perpendicular to the direction of movement **M** (FIG. **5**) of the blade housing end portion **82**.

In one preferred embodiment, the clamp body **60** is an aluminum casting while the blade housing **14** is fabricated of stainless steel. The lines of scoring can be easily implemented by laser scoring. Desirably, the lines of the scoring in the respective scoring areas **140**, **142** are sized and configured to interfit to increase frictional forces. In one preferred embodiment, the scoring **140** of the blade housing bearing surface **67***b* comprises a series of radial grooves (shown schematically as **150***a*, **150***b*, **150***c* in FIG. **6**), when viewed in cross section, having a depth d**1** between adjacent grooves of 0.010 inches, while the scoring of the clamp body bearing surface **66***b* comprises a series of radial grooves (shown schematically as **152***a*, **152***b*, **152***c* in FIG. **9**), when viewed in cross section, having a depth d**2** of 0.005 inches, a width of w**2** of 0.010 inches and a distance r**2** between adjacent grooves of 0.020 inches.

The areas of scoring may be viewed as an alternating pattern of grooves and ridges (distance between adjacent grooves). As can be seen from the above dimensions, the grooves **150***a*, **150***b*, **150***c* of the blade housing bearing surface **67***b* (width 0.020 inches) interfit with the ridges **153***a*, **153***b*, **153***c* of the clamp body bearing surface **66***b* (width **0.010** inches) interfit with the ridges **151***a*, **151***b*, **151***c* of the blade housing bearing surface (width 0.010 inches).

(Id. at p. 10).

Claims 4 through 11 also address scoring, grooves, and ridges in various ways:

    **4**. The rotary knife of claim **3** wherein the areas of scoring of the clamp body bearing surface and the first bearing surface of the blade housing comprise a plurality of parallel lines of scoring.
    **5**. The rotary knife of claim **4** wherein the plurality of parallel lines of scoring of the clamp body bearing surface comprise a pattern of grooves and ridges and the plurality of parallel lines of scoring of the first bearing surface of the blade housing comprise a pattern of groove and ridges.
    **6**. The rotary knife of claim **5** wherein the pattern of grooves and ridges of the clamp body bearing surface and the pattern of grooves and ridges of the first bearing surface of the blade housing are configured to interfit such that the ridges of the clamp body bearing surface are received by the grooves of the first bearing surface of the blade housing and the ridges of the first bearing surface of the blade housing are received by the grooves of the clamp body bearing surface.
    **7**. The rotary knife of claim **1** wherein at least one area of scoring is formed by scoring with a laser beam.
    **8**. The rotary knife of claim **1** wherein the head member bearing surface and the second bearing surface of the blade housing include areas of scoring to inhibit movement of the first end of the blade housing relative to the second end.
    **9**. The rotary knife of claim **8** wherein the areas of scoring of the head member bearing surface and the second bearing surface of the blade housing comprise a plurality of parallel lines of scoring.
    **10**. The rotary knife of claim **9** wherein the plurality of parallel lines of scoring of the head member bearing surface comprise a pattern of grooves and

ridges and the plurality of parallel lines of scoring of the second bearing surface of the blade housing comprise a pattern of grooves and ridges.

      **11**. The rotary knife of claim **10** wherein the pattern of grooves and ridges of the head member bearing surface and the pattern of grooves and ridges of the second bearing surface of the blade housing are configured to interfit such that the ridges of the head member bearing surface are received by the grooves of the second bearing surface of the blade housing and the ridges of the second bearing surface of the blade housing are received by the grooves of the head member bearing surface.

(Id. at p. 11).

Reading the claims in light of the specification, I do not find Hantover's proposed construction to be limited to just one method of creating lines of scoring. Instead, the specification encompasses scoring to include grooves and ridges, as well as noting the implementation of laser scoring. To adopt Hantover's construction would fail to give effect to the entire specification and ignore "the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315. I find the construction by Bettcher to be consistent with the specification.

### IV. SUPPLEMENTAL ISSUE-INNER BEARING FACE

At the oral argument, Hantover raised a new issue:

> Mr. Hurd: Although counsel for the parties did not identify any disputed claim terms in one of the Bettcher patents, which was U.S. patent 6,978,548, since that time unfortunately I think there has now developed a dispute with respect to one of those claim terms. And my concern is that in briefing this issue of what is a bearing face, he will – counsel for the parties agree that there are disputed claim terms in the '548 patent. We want to make sure the Court understands that we're not agreeing that whatever construction is being discussed in the briefing with respect to bearing lines, bearing face, applies to one particular term in the '548 patent, and that is the term "inner bearing face." And that's an important limitation in Claim 2 of the '548 patent. And we believe that term has a special definition, patentee is his own lexicographer, in that particular patent. So whatever construction is reached by the court based on the briefing for the bearing terms used in the other patents should not necessarily automatically apply to that term.

(Doc. No. 43 at p. 63). When asked by the Court why this issue was not waived, counsel for Hantover noted the issue arose during settlement negotiations regarding redesigned products and after the deadline for final identification of terms to be constructed.

The supplemental briefing by the parties is summarized as follows. Hantover contends Bettcher is limiting the scope of the "inner bearing face" and proposes a construction different from that in the '548 patent and Plaintiff's infringement contentions. It is Hantover's position that Bettcher is seeking to expand the definition of "bearing" beyond that of its ordinary definition to one including "capable of bearing." In Hantover's view, this represents a change in Bettcher's position. Hantover requests that I bar Bettcher from amending its infringement contentions on this issue, preclude Bettcher from arguing a definition other than what is contained in the '548 patent, and that I utilize Bettcher's prosecution statements to construe "bearing" as used in the blade patents to require actual engagement or contact.

Bettcher objects to this additional claim construction because Hantover has already admitted that its products contain an "inner bearing face" and did so in its non-infringement contentions of November 3, 2014. It argues no further construction is necessary because it has waived its entitlement to assert a construction for this phrase. Moreover, Bettcher stated in its claim construction briefing that all phrases in all five patents should be construed similarly, negating the shift in its position as alleged by Hantover. Bettcher states that Hantover "appears to read more into the language from the specifications" and launches into arguments appropriate for claim construction.

The specification defines the inner bearing face as "located axially between the blade supporting section 32*a* and the distal projection ends." (Doc. No. [548 patent language]). The construction and breadth of patent '548's "inner bearing face" is demonstrated in the examples below, with Example A allegedly representing Bettcher's position and Example B reflecting Hantover's position on this issue.

17

Example A:



Example B:



Neither party identified the '548 patent's term "inner bearing face" as requiring construction. Bettcher did not hide the fact it believed "the claim phrases at issue should be given the same meaning regardless of the patent or claim in which they appear." Yet the construction of this term as it bears upon the breadth of the "inner bearing face" appears to be an issue between the parties. The parties vigorously disagree as to the relevance of the prosecution history, another topic appropriate to claim construction.

Having carefully reviewed the supplemental briefing, I find the parties have a legitimate dispute which, if they choose, should be properly presented for claim construction. While I decline to grant the relief requested by Hantover, I will grant both parties leave to amend their infringement contentions[4], within 20 days of this Order and notify the Court of a claim construction dispute. A short briefing schedule will then be established on the issue of claim construction.

## V. CONCLUSION

For the reasons stated above, I find the following terms to be construed as follows:

> Frustoconical-having the shape of a portion of the exterior surface of a cone with the narrow end or tip removed; a cone being a solid generated by a straight line, one end of which remains fixed while the other end moves around a closed curve.
>
> (First and second) bearing surface-the area of a part capable of supporting mutual contact with another part.
>
> Bearing location-the area of a part capable of supporting mutual contact with another part.
>
> Area of scoring-surface having lines made upon it or onto it.

---

[4] L.P.R. 3.10(a) states as follows: Unless otherwise ordered by the Court, the parties' contentions and responses shall have the same binding effect on a party as a response to an interrogatory made under Rule 33 of the Federal Rules of Civil Procedure. The parties' disclosures and responses may be amended or supplemented without leave of court until the Final Contentions are due under L. P. R. 3.10(b)-(d); provided, however, that after submission of the exchange of claim terms under L. P. R. 4.1(c), additional claims in the patent(s) in suit may not be asserted without obtaining leave from the Court for good cause shown.

I find it unnecessary to construe the terms "line of bearing contact" or "annular bearing race," and decline to do so.

Finally, both parties are granted leave to amend their infringement contentions within 20 days from the date of this Order.

So Ordered.

s/ Jeffrey J. Helmick<br>United States District Judge