UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Bettcher Industries, Inc.,                                 Case No. 3:14-cv-406

             Plaintiff

        v.                                               MEMORANDUM OPINION

Hantover, Inc., et al.,

             Defendants

## I. BACKGROUND

Bettcher Industries, Inc. makes Whizard® Trimmers, rotary trimming knives and accessories used for the commercial trimming of meat. Bettcher owns the patents relating to the housing and blades for these items. Bettcher's principal place of business is in Birmingham, Ohio.

Hantover, Inc. is a Missouri corporation which also makes replacement parts for the Bettcher knives. Hantover has its principal place of business in Overland Park, Kansas. It is Hantover's manufacturing and sale of these replacement parts which Bettcher claims infringes its patents and violates a 2007 settlement agreement between Bettcher and Hantover regarding some of the same patents at issue here. Hantover's alleged infringing items were distributed by Heartland Fabrication & Machine, Inc.

In February 2014, Bettcher initiated this ligation against Hantover and Heartland, alleging five claims of patent infringement and one claim asserting breach of a 2007 settlement agreement. Hantover asserted counterclaims seeking declaratory judgment of the invalidity of patents at issue. In its answer, Hantover did not contest venue. Two months after the suit was filed, Heartland moved to dismiss the complaint for lack of personal jurisdiction. Some limited discovery was

conducted on this issue, and following briefing by all parties, Heartland was ultimately dismissed from the litigation in January 2015.

Due to Heartland's dismissal, the schedule to the Patent Disclosures and Claim Construction was amended. As the claim construction briefing began, Bettcher and Hantover also attempted mediation with the Hon. Jack Zouhary, with no resolution. A Markman hearing was conducted on July 20, 2015, followed by supplemental briefing by both parties. In addition, the Court conducted several conferences regarding an ongoing discovery dispute beginning in March 2016 through January 2017.

On August 4, 2017, Hantover filed its motion to amend the answer, to dismiss or transfer for improper venue. The parties briefed the issue with the Defendant supplementing with new controlling authority in mid-November 2017. I issued an opinion on claim construction in January 2018.

I held a status conference on January 22, 2018, and set the matter for oral argument on Hantover's motion as to venue. I also requested the parties submit a proposed agenda for the hearing. On January 26, 2018, Bettcher filed a motion for reconsideration as to a portion of the Court's claim construction opinion.

Oral argument on the pending motions and related issues was held on March 13, 2018. At the conclusion of the hearing, I set supplemental post-hearing briefing dates.

This matter is before me on Hantover's motion to amend its answer to assert an improper venue defense as well as seeking to dismiss or transfer this action. (Doc. No. 57). Also before me is Plaintiff's opposition (Doc. No. 59), Defendant's reply (Doc. No. 62), Defendant's notice of new controlling authority (Doc. No. 68), and Plaintiff's response to the notice of controlling authority

(Doc. No. 69). In making this determination, I consider the arguments presented at the March 13, 2018 hearing. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1338(a).

## II. VENUE AS TO PATENT CLAIMS

In patent disputes, venue is addressed in 28 U.S.C. § 1400(b), wherein "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

In May 2017, the state of the law on this subject was addressed by the Supreme Court in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S.Ct. 1514 (2017), as follows:

> In *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 226, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957), this Court concluded that for purposes of § 1400(b) a domestic corporation "resides" only in its State of incorporation.
>
> In reaching that conclusion, the Court rejected the argument that § 1400(b) incorporates the broader definition of corporate "residence" contained in the general venue statute, 28 U.S.C. § 1391(c), 353 U.S. at 288, 77 S.Ct. 787. Congress has not amended § 1400(b) since this Court construed it in *Fourco*, but it has amended § 1391 twice. Section 1391 now provides that, "[e]xcept as otherwise provided by law" and "[f]or all venue purposes," a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." §§ 1391(a), (c). The issue in this case is whether that definition supplants the definition announced in *Fourco* and allows a plaintiff to bring a patent infringement lawsuit against a corporation in any district in which the corporation is subject to personal jurisdiction. We conclude that the amendments to § 1391 did not modify the meaning of § 1400(b) as interpreted by *Fourco*. We therefore hold that domestic corporation "resides" only in its State of incorporation for purposes of the patent venue statute.

*Id.* at 1517.

The Court's decision in *TC Heartland* raised questions about waiving the right to challenge venue and a change in the controlling law. In November 2018, the Federal Circuit addressed these issues raised via a writ of mandamus:

> Many district courts have faced similar situations since *TC Heartland* was decided, and the result has been widespread disagreement over the change-of-law question relevant to waiver under Rule 12(g)(2) and (h)(1)(A). We answer that

question and clarify the basic legal framework governing determinations of forfeiture of a venue defense. We conclude that *TC Heartland* changed the controlling law in the relevant sense: at the time of the initial motion to dismiss, before the Court decided *TC Heartland*, the venue defense now raised by Micron (and others) based on *TC Heartland's* interpretation of the venue statute was not "available," thus making the waiver rule of Rule 12(g)(2) and (h)(1)(A) inapplicable. But that waiver rule, we also conclude, is not the only basis on which a district court might reject a venue defense for non-merits reasons, such as by determining that the defense was not timely presented. A less bright-line, more discretionary framework applies even when Rule 12(g)(2) and hence Rule 12(h)(1)(A) does not. We grant the petition, vacate the order and remand for consideration of forfeiture under that framework.

*In re Micron Technology*, 875 F.3d 1091, 1094 (Fed. Cir. 2017).

*Micron* examined the Supreme Court's guidance in *Dietz v. Bouldin, Inc.*, 136 S.Ct. 1885, 1891 (2016), regarding the use of procedural devices which fall within the Fed. R. Civ. P. 1's "paramount command: the just, speedy and inexpensive resolution of disputes." The *Micron* court agreed that the limits on authority, outlined in *Dietz*, provide district courts with "authority to find forfeiture of a venue objection." 875 F.3d at 1101. Those limits on authority articulated in *Dietz* include "an inherent power [which] must be a reasonable response to a specific problem and the power cannot contradict any express rule or statute." *Id.* (citing *Dietz*, 136 S.Ct. at 1892). In making this determination, the Court in *Micron* advised, "[t]his authority must be exercised with caution to avoid forbidden circumvention. And exercise of the authority certainly may rest on sound determinations of untimeliness or consent." *Id.* at 1101. The Federal Circuit also noted this authority "requires respecting, and not 'circumvent[ing],' relevant rights granted by statute or Rule." *Id.*

### III. DISCUSSION

Hantover argues it did not waive its right to asserting an objection to venue by virtue of the decision in *Macron*. The Defendant further contends 28 U.S.C. § 1406 dictates the outcome on waiver after *Macron*. Because venue is not properly situated in the Northern District of Ohio, based upon *TC Heartland*, Hantover requests dismissal or transfer to the District of Kansas.

4

In contrast, Bettcher argues Hantover waived its objection to venue when it entered into the settlement agreement in 2007. Under the guidance of *Micron*, Bettcher contends Hantover has effectively consented to venue negating Hantover's arguments seeking transfer of this action.

At oral argument, both sides agreed the claims should not be severed as it would be contrary to the interests of justice and an efficient disposition of the litigation.

Hantover filed its motion to amend less than three months after *TC Heartland* was issued and three months before the Federal Circuit's decision in *Micron*. This case, however, presents an unusual situation in light of the holding of *TC Heartland* because of the previous litigation before Judge Katz. *Bettcher Industries, Inc. v. Hantover, Inc.*, Case No. 3:06-cv-741 (N.D. Ohio). That litigation began in March 2006 but was ultimately settled in mid-2007. The settlement agreement states interpretation shall be in accordance with Ohio law and addresses enforcement as follows:

> Should any party fail to perform any portion of its obligations under the terms of this Agreement, the parties agree that Judge Katz of the Northern District of Ohio, to whom the Litigation is assigned, will have continuing jurisdiction over the case for the purposes of enforcing the Agreement.

(Doc. No. 1-6, p. 7). There is no dispute that a number of the patent infringement claims are directly related to the prior litigation as asserted in the Sixth Cause of Action. (Doc. No. 1 at ¶¶ 66-68).

The continuing jurisdiction of this forum over disputes related to the patent infringement claims is not contrary to basic contract principles in light of the express language. *See e.g., Antiop, Inv. v. Reckitt Benckiser Pharmaceuticals, Inc.*, 198 F.Supp.3d 777, 781 (E.D. Ky. 2016) (construction of forum selection clauses are interpreted by reference to ordinary contract principles). Moreover, the language contained in this provision is mandatory and not permissive. *See General Elec. Co. v. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994) (mandatory language in forum selection clause must contain clear language as to jurisdiction and venue in order to have force). At the time

5

Hantover agreed to this provision, it was aware disputes arising from the agreement would be brought in the Northern District of Ohio.

This litigation involves patent infringement claims stemming from a breach of a settlement agreement. The underlying infringement claims must be adjudicated in order to resolve the breach of contract claim. Severing those interrelated claims would not be an efficient use of resources from everyone's standpoint.

Additionally, this four-year-old litigation has proceeded in this forum through claim construction. Based upon the representations at oral argument, the majority of discovery has been completed and the parties indicate readiness for trial within nine months. To transfer this case, in its advanced stage, into a new forum and upon a new judicial officer would not constitute a reasonable response to the problems and needs of the parties, nor comport with the interests of justice.

Therefore, having considered the arguments of the parties in light of the guidance afforded by *Micron*, I find Hantover waived its objections to venue by virtue of its assent to the 2007 Settlement Agreement.

### IV. CONCLUSION

For the reasons stated above, Hantover's motion to amend its answer and for dismissal or transfer (Doc. No. 87) is denied. A telephone status conference is scheduled for May 10, 2018 at 10:30 a.m. The Court will initiate the call.

So Ordered.

                                                    s/ Jeffrey J. Helmick
                                                    United States District Judge